**In re CANDY LANE CORP., Bankrupt.**

**Bankruptcy No. 79 B 685.**

United States Bankruptcy Court,
S.D. New York.

Sept. 9, 1986.

Leon C. Marcus, P.C., New York City, for Lawrence Sarf, trustee.

## MEMORANDUM DECISION ON MOTION WITH RESPECT TO TRUSTEE'S COMMISSIONS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

In a striking display of hubris, this trustee seeks to add new meaning to the concept of maximum statutory commissions allowable under Section 48(c) of the former Bankruptcy Act.

Lawrence Sarf, who operates PMS, a collection agency for creditors engaged in the restaurant and food business, was nominated as the trustee in bankruptcy by the creditors whose claims were represented in this Act case. Sarf's agency, PMS, was also elected by the creditors' committee to act as secretary for the committee. The bankrupt, Candy Lane Corp., filed a petition for reorganization under Chapter XI of the former Bankruptcy Act on April 19, 1979. It was engaged in the manufacture and sale of candy products in Poughkeepsie, New York. Candy Lane Corp. was converted for liquidation in bankruptcy on May 17, 1982 on motion by the Internal Revenue Service for failure to pay post-petition taxes when due. The trustee did not continue the business of the bankrupt. The gross receipts of the estate totalled $1,385,053.92; disbursements amounted to $556,135.43 and the balance on hand was $828,918.49.

Lawrence Sarf, as trustee in bankruptcy, applied for maximum statutory commissions under Section 48(c) of the former Bankruptcy Act, which he computed to be $14,265.54. As in most of the cases in which Mr. Sarf was nominated as trustee in bankruptcy by creditors in former Bankruptcy Act cases, he did not appear in this court at any of the scheduled hearings, with one exception, and was known to the court in name only. The exception was the hearing on applications for allowances in this case. At a hearing previous to the hearing on applications, this court had rhetorically commented on whether there actually was an individual known as Lawrence Sarf, or was this name used as a pseudonym for the PMS collection agency. In-

deed, the court was of the belief that Mr. Sarf was as incorporeal as Claude Raines in his role as "The Invisible Man." Mr. Sarf then appeared at the hearing on applications and revealed that he actually existed and that he had arranged for the investment of estate funds in certificates of deposit. In addition to awarding Mr. Sarf $7000 in commissions for acting as the trustee in bankruptcy in this case, the court also allowed his collection agency, PMS, the full amount requested as secretary for the creditors' committee, namely $2,373.80.

The attorneys for the trustee were Leon Marcus and John Preefer, Esqs. They performed virtually all of the services required to liquidate this case, as fully set forth in their application for allowances. For their services they requested, and were allowed, the sum of $98,938.00. The unsecured creditors will receive a distribution of approximately 39% of their allowed claims. Having been awarded the full amount requested for services on behalf of the trustee, Mr. Leon Marcus now believes that the trustee has an absolute right to maximum statutory commissions and that anything less constitutes a reduction in compensation. In referring to this court's Order Fixing Compensation, Allowing Disbursements And Approving Accounts, dated August 29, 1986, Mr. Marcus said:

> The Order does not reflect a reason for the reduction of Mr. Sarf's compensation from the amount requested in the Application.

> . . . .

> On behalf of Mr. Sarf, we respectfully request, pursuant to the last decretal paragraph of the Order, a more specific statement of the facts which entered into Your Honor's determination with respect to the award of compensation to the Trustee.

The trustee's attorney's request for a more specific statement with respect to the August 29, 1986 award of compensation to the trustee, dated September 4, 1986, satis-

fies the requirements of former Bankruptcy Rule 752(b), which provides in part as follows:

(b) Amendment. Upon motion of a party made not later than 10 days after the entry of a judgment the court may amend its findings or make additional findings and may amend the judgment accordingly.

■ The court has carefully reconsidered the factors which were addressed in arriving at the trustee's award and has also reexamined the summary of billable hours delineated by the trustee's attorneys in support of their application for an allowance. The court finds that virtually all of the work on behalf of this estate is claimed to have been performed by the trustee's counsel, who periodically informed the trustee as to the status of this case by letter or telephone. All claims filed in this case were examined by the trustee's counsel. The trustee did not perform this function, although it is one of the fundamental tasks performed by trustees. The trustee's application states:

10. The claims on file with the Bankruptcy Court have *been examined* and should be allowed for the amounts therein claimed or for such amounts as have been fixed by order duly made.

(Emphasis added). The trustee does not say that *he* examined the claims.

Based upon the activities set forth in the trustee's application for commissions, the court finds that the trustee opened a bank account for the estate, signed checks for disbursements from the estate, arranged for the investment of estate funds in certificates of deposit, assumed responsibility for estate funds charged to him and received status reports from his attorneys. A statement by District Judge Grady in the Northern District of Illinois most appropriately applies to this trustee's activities:

It seems clear that the maximum fee was not justified in this case, where practically all of the work is claimed to have been done by the trustee's attorney. The statute contemplates that the court will use

judgment, not that it will automatically award the maximum fee in every case. *In re Sumthin' Special, Inc.*, 2 B.R. 743, 750–751 (N.D.Ill.1980).

A trustee is not entitled to receive maximum commissions as an absolute right in every case under the Act. This point is manifestly expressed as follows:

Since § 48 prescribes merely a maximum, bankruptcy officers have no absolute right to full commissions, and allowances should be adjusted to the services performed.

2A Collier on Bankruptcy ¶ 48.09, p. 1811 (14th ed. 1978).

■ In response to the trustee's counsel's request for more specific findings and pursuant to Bankruptcy Rule 752(b), which authorizes the court to "amend its findings or make additional findings and ... amend the judgment according ..." it is found that the allowance for the trustee's basic services of maintaining bank accounts, issuing checks, investing in certificates of deposit and receiving status reports from his attorneys, requires further adjustment for the relatively nominal activities performed by him. Indeed, the allowance of $7000 appears overly generous in light of the "economic spirit" of the Bankruptcy Act. *See In re Paramount Merrick, Inc.*, 252 F.2d 482, 485 (2d Cir.1958). A fee of $5000 is more in line with what would constitute a reasonable commission for the services performed by this trustee *qua* trustee, as distinguished from the services which his company, PMS, performed as secretary to the creditors' committee and for which an award of $2,373.80 was previously allowed.

Accordingly, this court's August 24, 1986 order fixing compensation is hereby amended to reflect an adjustment of the allowance to the trustee in bankruptcy to the sum of $5,000, which this court finds to be fair and reasonable.

IT IS SO ORDERED.